UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 4:20-mj-96-DDN |
| | ) |
| BRYANT WILLINGHAM, | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM IN OPPOSITION TO GOVERNMENT'S MOTION SEEKING DETENTION

Defendant, Bryant Willingham, through his attorney Assistant Federal Public Defender Rachel Korenblat, opposes the government's motion seeking his detention. Dkt. No. 4. As shown below, the complaint does not give rise to a rebuttable presumption. The Court can fashion conditions to assure Mr. Willingham's appearance and protect the public.

### Procedural History

On April 9, 2020, the government charged Mr. Willingham by a complaint with one count of carjacking, in violation of 18 U.S.C. § 2119. Dkt. Nos. 1-2. On that same day, the government moved to detain Mr. Willingham, arguing the complaint gives rise to a rebuttable presumption under 18 U.S.C. § 3142(e)(2) because he "has been convicted of a qualifying offense." Dkt. No. 4 at p. 1. The government further argued, without providing any specifics, that "no conditions or combination of conditions . . . will reasonably assure the appearance of the defendant as required and the safety of any other person and the community." *Id.*

On April 10, 2020, Mr. Willingham had his initial appearance on the complaint. Dkt. No. 7. At that time, the Court read into the record general comments regarding Mr. Willingham's criminal history based on an informal communication with the Pretrial Services office. Neither party, however, had access to this information.[1] The Court indicated it would schedule a detention hearing once Pretrial filed its Pretrial Services Report.

On April 13, 2020, Pretrial filed its Pretrial Report recommending detention. Dkt. No. 12. After defense counsel inquired about resetting Mr. Willingham's detention hearing, the Court ordered the parties to respond by written memorandum as to the government's request for detention. Dkt. No. 14.

This memorandum follows.

## Argument

## The Government's Detention Motion Contravenes the Bail Reform Act's Mandates

### I. The Bail Reform Act Favors Pretrial Release

The Bail Reform Act, 18 U.S.C. §§ 3141 *et seq.*, ("the Act"), authorized federal judges to detain defendants without bond pending trial to assure either the appearance of the defendant or the safety of the community. The Act, however, "did not . . . signal a congressional intent to incarcerate wholesale the category of accused persons awaiting trial." *United States v. Orta*, 760 F.2d 887, 890 (8th Cir. 1985). As the Eighth Circuit stressed, "Congress was demonstrating its concern about 'a small but identifiable group of particularly dangerous defendants as to whom neither the imposition of stringent release conditions nor the prospect of revocation of release can

---

[1] The government represented that it had an idea as to Mr. Willingham's criminal history, but counsel had not spoken to Pretrial prior to the hearing. The government did not disclose this information to defense counsel, nor did defense counsel communicate with Pretrial before the hearing.

2

reasonably assure the safety of the community or other persons.'" *Id*. (quoting Senate Committee on the Judiciary, S. Rep. No. 225, at 3189 (1st Sess. 1983)). Accordingly, the Supreme Court held: "[i]n our society liberty is the norm and detention prior to trial . . . is the carefully limited exception. *United States v. Salerno*, 481 U.S. 739, 755 (1987). The Bail Reform Act, therefore, "favor[s] release over pretrial detention." *Orta*, 760 F.2d at 890.

The Act provides courts with numerous alternatives to incarceration with progressively more stringent restrictions on liberty. 18 U.S.C. § 3142(a)-(f). The alternatives begin with release on recognizance, progressing to release with conditions, and then finally, detention without bond. Before a court can detain a defendant, the court must consider the availability of each step, in turn, to find under section 3142(b) that a bond "will not reasonably assure the defendant's appearance . . . or will endanger the community." *Orta*, 760 F.2d at 890 (internal quotations omitted). Compliance with this graduated linear procedure—considering each alternative one-by-one—is "critical." *Id.*

In other words, even if the court finds that a bond will not reasonably assure the person's appearance or will endanger the public's safety, detention is still not authorized unless the court determines that there are no conditions or combination of conditions that will reasonably assure the appearance of the defendant or the safety of the community. *Orta*, 760 F.2d at 890-91 ("The wide range of restrictions available ensures, as Congress intended, that very few defendants will be subject to pretrial detention.").

Indeed, detention under the Bail Reform Act was meant to be quite difficult for prosecutors to obtain. *See United States v. Holloway*, 781 F.2d 124, 125 (8th Cir. 1986) (the legislative history of the Act makes it clear that pretrial detention "is to be the exception rather than the rule"); *United States v. Kisling*, 334 F.3d 734, 735 (8th Cir. 2003) (emphasizing that the standards for release are tied to a *reasonable*

*assurance* that the defendant is not a flight risk or danger); *Orta*, 760 F.2d at 892 ("reasonably assure" is not the equivalent of "guarantee").

Here, the government has not passed this high hurdle to detain Mr. Willingham.

## II.  The Rebuttable Presumption Does Not Apply

Contrary to the government's detention motion, Mr. Willingham has not been "convicted of a qualifying offense" to trigger the rebuttable presumption under 18 U.S.C. § 3142(e)(2), which cross-references offenses listed in section 3142(f)(1), notably "crimes of violence." Arguably carjacking can be considered a "crime of violence," but Mr. Willingham has not yet been convicted of that charge. Nor do any of his prior convictions constitute a "crime of violence." While Mr. Willingham has a prior conviction for Illinois burglary, 720 ILCS 5/19-1(a), this conviction does not qualify post-*Johnson/Mathis* as a crime of violence. *See United States v. Ballard*, 950 F.3d 434, 436 (7th Cir. 2020) (government concession that attempted Illinois burglary is not a violent felony under the Armed Career Criminal Act); *Faulkner v. United States*, 926 F.3d 475, 477 (8th Cir. 2019) (same).

Accordingly, the government's motion does not provide a basis for the Court to apply a rebuttable presumption.

## III.  If the Rebuttable Presumption Applies, Mr. Willingham Has Met It

If the Court finds there is a rebuttable presumption that "no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of the community." 18 U.S.C. § 3142(e). This presumption, however, does not end the inquiry:

> In a presumption case . . . a defendant bears a limited burden of production-not a burden of persuasion-to rebut that presumption by coming forward with evidence he does not pose a danger to the community or a risk of flight. . . . Once a defendant has met his burden of production relating to these two factors, the presumption favoring detention

4

>does not disappear entirely, but remains a factor to be considered among those weighed by the district court.[2]

*United States v. Abad*, 350 F.3d 793, 797 (8th Cir. 2003).

Once a defendant provides evidence that he is not a flight risk or danger, thereby overcoming the presumption, the Court then must consider:

>(1) the nature and circumstances of the crime; (2) the weight of the evidence against the defendant; (3) the history and characteristics of the defendant, including mental condition, family ties, employment, community ties, and past conduct; and (4) the seriousness of the danger to the community or to an individual.

*Id.* (citing 18 U.S.C. § 3142(g)).  In assessing these factors, the weight of the evidence against the defendant is the least important factor to consider.  *United States v. Motamedi*, 767 F.2d 1403, 1408 (9th Cir. 1985).  This is because the Bail Reform Act does not modify or limit the presumption of innocence.  18 U.S.C. § 3142(j).

Maintaining that this limited burden of production is inapplicable here, Mr. Willingham nevertheless presents sufficient evidence to support that he is not a flight risk nor a danger.  Even though Mr. Willingham has prior felony convictions, they are all quite stale.  The most recent felony conviction, his 2013 Illinois burglary case, is from seven years ago.  For those old convictions, he had three periods where he was declared an "absconder," but for his supervision occurring in the past decade (his 2008 Tampering with a Motor Vehicle and 2009 Attempt to Steal a Motor Vehicle), he discharged his probation both times afterwards.  Dkt. No. 12 at pp. 8-9.  According to

---

[2] Mr. Willingham disagrees that the presumption remains a factor the district court weighs once he has met his burden of production.  Continuing to weigh the presumption once he has met his burden would eviscerate the government's burden of persuasion.  Thus, the rebuttable presumption should not be a reason this Court finds it cannot fashion conditions of release.

5

the Pretrial Report, for his last term of supervision (2012 Tampering with a Motor Vehicle), Mr. Willingham discharged that parole too, even though he received a violation for a felony law violation.[3]  The Report, however, does not state that this violation revoked his parole or that he was conviction of that felony.

Mr. Willingham's record lists several convictions for failure to appear, but like his felonies, they are long in the past—the most recent one is almost decade ago.  Dkt. No. 12 at p. 10.  Furthermore, they all appear connected to local ordinances or misdemeanors, probably related to traffic.

Mr. Willingham also has two viable home plans, either with his girlfriend or with his brother, and he had a job prior to being laid off, apparently because of the COVID-19 shut down.[4]

Finally, aspects of this case mitigate Mr. Willingham's risk of flight or danger even though carjacking is a serious crime.  Taking the complaint at face value, Mr. Willingham allegedly car jacked the postal vehicle because he was in fear of his life, believing that armed men were running after him.[5]  Dkt. No. 2 at p. 1.  Mr.

---

[3] The Pretrial Report does not provide any information regarding supervision relating to Mr. Willingham's 2013 burglary case.  In that case, the court sentenced Mr. Willingham to "periodic imprisonment," which indicates that he left and returned to custody multiple times to complete that sentence.  Dkt. No. 12 at p. 10.  If accurate, this too supports Mr. Willingham's lack of flight risk or danger.

[4] Prior to his arrest, Mr. Willingham was not living at his girlfriend's after a disagreement, but he believes he can now return.

[5] The complaint provides that the postal worker said Mr. Willingham was armed with a firearm at the time of the carjacking.  Dkt. No. 2 at p. 1.  The complaint makes no other reference to a firearm, even though Mr. Willingham interacted with several other people who law enforcement interviewed.  Nor does the complaint

Willingham firmly held this belief because, after crashing the postal vehicle, a bus driver allowed him onto the bus without a ticket because Mr. Willingham's "claim that unknown parties were attempting to kill him." *Id.* at pp. 1-2.

Without conceding the accuracy of the allegations, one of two things caused this offense—mental illness and/or drug impairment that made Mr. Willingham really believe his life was in danger or his life really was in danger. If the latter, this is an affirmative defense to the charge. If the former, the Court can fashion conditions of release to assure Mr. Willingham's appearance and public safety.

### IV. Conditions of Release will Reasonably Sure Mr. Willingham's Appearance and the Community's Safety

Pretrial conditions such as drug testing and treatment, as well as mental health counseling will alleviate an apparent cause to this offense. Indeed, Mr. Willingham admitted himself previously into a drug treatment program, demonstrating his amenability to such treatment. Dkt. No. 12. Furthermore, ankle monitoring and home curfew will assure his appearance and the public safety.

Erring on the side of release with conditions, rather than custody is even more important now given the COVID-19 pandemic. Currently, the virus has caused over 30,660 deaths in the United States and infected over 667,940 people, though both of those figures are surely higher due to lack of testing. The New York Times, *Coronavirus in the U.S.: Latest Map and Case Count*, https://www.nytimes.com/interactive/2020/us/coronavirus-us-cases.html. As of April 17, 2020, there are 5,111 positive cases in Missouri with 171 deaths. *Id.*

---

reference recovery of any type of weapon. According to Mr. Willingham's statement, he denied possessing a firearm.

7

Jails are particularly ill-equipped to address this threat. As but one stark example, the Cook County Jail in Chicago "is now the nation's largest-known source of coronavirus infections." Timothy Williams and Danielle Ivory, *Chicago's Jail is Top U.S. Hot Spot as Virus Spreads Behind Bars*, N.Y. Times, Apr. 8, 2020. Initially, only two inmates were infected. But within two or so weeks, "the virus exploded behind bars, infecting more than 350 people." *Id.* So far, the government has fought release of currently detained clients by lauding the Bureau of Prisons' efforts, which local jails here are supposed to emulate, in oppositions to various motions of release.[6] The government's opposition has not aged well. By the end of March, the BOP had about six positive cases. In various filings the government implied this demonstrated the BOP's success with containing the virus. But, several weeks later, over 530 inmates have tested positive as well as over 300 staff with 18 inmate deaths.

Even though Mr. Willingham is 39 years old, he is still vulnerable. As the New York Times reported, data from the Centers for Disease Control ("CDC") found "that nearly 40 percent of patients sick enough to be hospitalized were aged 20 to 54." Pam Belluck, *Younger Adults Make Up a Big Portion of Coronavirus Hospitalizations in U.S.*, New York Times, Mar. 19, 2020. And this virus disproportionately kills African Americans, such as Mr. Willingham. John Eligon, et al*., Black Americans Face Alarming Rates of Coronavirus Infection in Some States*, N.Y. Times, Apr. 7, 2020.

This unfortunately hits home. All but three of the deaths in St. Louis were African American. Paulina Cachero, *All but 3 People who Died from COVID-10 in St. Louis, Missouri, were Black*, Business Insider, Apr. 12, 2020. And "African Americans make up more than half of St. Louis County's coronavirus cases," while only 24.9% of the overall population. *Id.*

---

[6] Because citation would contain names of other clients, defense counsel can provide the Court with examples if the Court wishes.

8

Considering the very real threat the COVID-19 pandemic poses to Mr. Willingham while incarcerated, as well as the conditions the Court can fashion for his release, this Court should deny the government's detention motion.

## Conclusion

For the reasons stated above, Mr. Willingham respectfully requests this Court deny the government's motion seeking detention by ordering his release with pretrial conditions.

Dated:  April 17, 2020

Respectfully submitted,

/s/ Rachel Korenblat
Rachel Korenblat
Assistant Federal Public Defender
1010 Market Street, Suite 200
St. Louis, Missouri 63101
Telephone: 314-241-1255
Fax: 314 241 3177
E-Mail: Rachel_Korenblat@fd.org
Attorney for Defendant

## CERTIFICATE OF SERVICE

Assistant Federal Public Defender Rachel Korenblat certifies that she caused the Motion to Revoke the Detention Order be filed electronically with the Clerk of the Court, to be served by operation of the Court's electronic filing system upon Assistant United States Attorney, John Ware.

Dated:   April 17, 2020.

/s/ Rachel Korenblat